287 S.W.2d 83 (1955)
STATE of Tennessee ex rel. K.P. BANKS, Supt., et al.
v.
Rufus TAYLOR et al.
Supreme Court of Tennessee.
December 9, 1955.
On Motion for Counsel Fees February 3, 1956.
*85 Banks, Street & Banks, Guy O. Ferguson and George F. Dugger, Elizabethton, for K. P. Banks, Supt. Education and J. A. Street, Member Board of Education of Carter County, complainants.
Shull & Johnson, Elizabethton, for Rufus Taylor, A.C. Sams, Condon Williams and Edith Brumit, Members of Board of Education, Carter County.
Lloyd Shell, County Atty., Elizabethton, for W. C. O'Brien, County Judge of Carter County.
George F. McCanless, Atty. Gen., and James M. Glasgow, Asst. Atty. Gen., for Commissioner of Education.
SWEPSTON, Justice.
There are only two questions involved on this appeal: (1) What is the effective date of Chapter 136, Public Acts of 1955, the General Educational Bill? (2) Is Code, § 2324 of the 1932 Code presently effective so that it is mandatory upon the Board of Education to elect as county-wide employees, including supervisors only those who have been recommended by the county superintendent of education?
These two questions are posed by the filing of a bill for a declaratory judgment by K.P. Banks, Superintendent for Carter County, and J.A. Street, member of the Board of Education, against Rufus Taylor, Chairman of the Board of Education, the members thereof, Dr. Quill Cope, State Commissioner of Education, and W.C. O'Brien, County Judge of Carter County.
The bill contains allegations of misconduct on the part of certain of the county officials who are made defendants, which allegations are denied by said defendants. For the purpose of the disposition of this suit it will not be necessary to mention these allegations any further.
It is averred that section 4 of said Chapter 136, Public Acts of 1955, requires that the Board of Education shall elect only those persons to system-wide positions who are recommended by the local superintendent of schools. That among others the two supervisors in Carter County are among the system-wide positions. That in order for the county to participate in the State school funds amounting to about $250,000 for this county, it is necessary for the county to comply with the requirements of the 1955 General Educational Appropriation Act and the rules of the State Board of Education; that Section 2324 of the Code of 1932 requires the Board of Education of the county to accept the recommendations of the Superintendent of Schools and that for the past two years the Board has refused to do so; that the Board has called a meeting for April 26, 1955, for the purpose of electing such school personnel in violation of said Act of 1955.
It is averred that such action, if taken, will result in withholding by the State of State funds and in the imposition of additional tax burden upon the taxpayers of the county which will cause irreparable damage and, therefore, a declaration is sought.
It is the insistence of the defendants that the said Chapter 136, Acts of 1955, was not to become effective by its own terms until July 1, 1955; that before that date neither the General Education Bill, Chapter 70, Acts of 1953, nor any other current Act required the Board of Education to elect only such personnel as was recommended by the county superintendent. Secondly, that said Code § 2324 had been repealed by implication by previous general educational Acts.
The Chancellor, in a written opinion, held that the effective date of the 1955 Act was July 1, 1955. He refused to make a declaration *86 with reference to said Code § 2324. He dismissed the bill.
The last two sections of the Act are as follows:
"Section 41. Be it further enacted, That effective July 1, 1955, Chapter 70, Public Acts of 1953, the caption of which is set forth in the caption hereof, Chapter 35, Public Acts of 1953, the caption of which is set forth in the caption hereof, and all other laws or parts of laws in conflict with the provisions of this Act, be and the same are hereby repealed."
"Section 42. Be it further enacted, That this Act take effect from and after July 1, 1955, the public welfare requiring it.
 "Passed: March 2, 1955.
 "James L. Bomar,
 Speaker of the House
 of Representatives.
 "Jared Maddux,
 Speaker of the Senate.
 "Approved: March 10, 1955.
 Frank G. Clement,
 Governor."
Nothing in section 4 of this Act, either expressly or by necessary implication, undertakes to take said Section 4 out from under the provisions of sections 41 and 42 above quoted. Nothing but the forced and unnecessary constructon of section 4 could possibly take same out from under the general effective date of the Act as expressly so stated therein, and this we are not willing to do.
It is settled law that the Constitution, Art. II, § 8, provides that no general law shall take effect until 40 days after its passage, unless the same, or the caption shall state that the public welfare requires that it should take effect sooner. Also that the Legislature may, by the terms of the Act itself postpone its taking effect to a period beyond the 40 days. Wright v. Cunningham, 115 Tenn. 445, 91 S.W. 293, 295.
That case also shows that a statute is duly enacted and vitalized immediately upon full compliance by the Legislature with the requirements of the Constitution for the enactment of laws, but that it does not become effective and binding upon the citizens to comply therewith except as provided by the terms of the Act itself, or in the absence thereof, by the provisions of the Constitution.
State ex rel. Linkous v. Morris, 136 Tenn. 157, 189 S.W. 67, for illustration, involves two Acts, one being enacted into law on January 29, 1915, the other on March 12, 1915, but both effective on March 12, 1915, thus making one effective less than, and the other more than the constitutional 40 days from its enactment.
The 1950 Code Supplement is an example of an Act taking effect at a date postponed beyond the constitutional 40 days, the same having been passed March 6, 1951, approved by the Governor on March 9, 1951, with the effective date thereof January 1, 1952.
It will be conceded that the Legislature may provide that part or parts of an Act take effect before the remainder of the Act. This, however, must be done by express language or by necessary and reasonable implication, but how can it be said that the draftsmen of this bill, being obviously skillful, and the Legislature who have had these bills presented every biennium for several years, had any intention that section 4 of this bill should become effective before July 1, 1955, contrary to the provisions of sections 41 and 42, without expressly so stating?
We think the Chancellor was correct in holding that the effective date of section 4, was as specified in the Act, July 1, 1955, and therefore overrule the first assignment.
With reference to the second assignment of error complaining of the failure of the Chancellor to make a declaration with reference to the general education Act of 1925, codified at section 2324 of the Code, we do *87 not deem it necessary to go into a discussion of the construction of said 1925 Act for the reason that Chapter 70 of the Public Acts of 1953, which was not effective until July 1, 1955, is a general educational Act purporting to cover the entire system. That being true, the following rule of law comes into operation.
Where a statute purports to cover the entire subject matter or field, it repeals by implication all prior Acts, whether inconsistent therewith or not, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes. See the authorities collected in Northcross v. Taylor, 29 Tenn.App. 438, at pages 446 and 447, 197 S.W.2d 9, at page 12, wherein it is said: "As heretofore indicated we think the Act and the Code Section are in conflict, but the Act being comprehensive and covering the whole subject, the Act stands by itself and all previous Acts are repealed whether in conflict or not." See also: Rodemer v. Mitchell, 90 Tenn. 65, 15 S.W. 1067.
In Lewis v. Mynatt, 105 Tenn. 508, 58 S.W. 857, the established rule is recognized but distinguished, and of course, has no application where the statute does not purport to cover the entire subject or where the later statute purports merely to amend the former statute. Such is not the case here, however.
Since said Chapter 70, Acts of 1953, had no requirement that the Board elect only those recommended by the Superintendent there was no such effective provision after the enactment of said Chapter 70, Acts of 1953, until the effective date of Chapter 136, Acts of 1955.
Counsel for the appellants cite the two cases of Eason v. Hardin County Board of Education, 180 Tenn. 147, 172 S.W.2d 816, and State ex rel. Ellis v. Robbins, 195 Tenn. 681, 263 S.W.2d 518, in both of which opinions this Court treated as being in effect, the provisions of the General Education Act of 1925, and in the former case the language of the opinion is subject to the inference or perhaps construction that the Board was required to accept the recommendation of the Superintendent, whereas in the latter case the opinion merely said that the statute required the superintendent to make recommendations but did not say the Board was bound to act upon same. Be that as it may in either case  it does not appear from the opinions that any question was at issue involving the effectiveness of the 1925 Act with regard to whether it had been repealed by implication. To the contrary that is a very material inquiry in the present case. We think there was no such requirement of law in existence in the year 1955 before July 1st.
We think the Chancellor should have made a declaration on this point and we now make the same. The decree below is in all other respects affirmed.

Opinion on Motion of Counsel for Appellants and Appellees Respectively, for Allowance of Counsel Fees for Services in the Supreme Court
Counsel for appellees have filed a motion for the allowance by this Court of a fee for their services in this Court of not less than $500, to be paid out of the school funds of Carter County, stating that the record shows that the Chancellor fixed their fee in the Trial Court at the sum of $350 for services in that Court, said sum to be paid out of the school funds of said county.
Counsel for appellants who neither sought nor obtained an allowance of fee in the Chancery Court, have filed a written motion also, for the allowance by this Court of the sum of $500 to them for their services for representing the complainants appellants in this Court, and further, that the cause be remanded to the Chancery Court for the sole purpose of having a reasonable fee fixed for services in the Chancery Court; or in the alternativethey move that the cause be remanded to the Chancery Court or the purpose of fixing their fees for services in both the Supreme Court and the Chancery Court; although the written motion does not state that the fee should be paid out of the school funds, it leaves the inference that such is the *88 aim because it is said that the appellants acted in the public interest to conserve the public funds and not for any personal gain or aggrandizement.
Reference to the record and the original opinion of this Court will disclose that this suit purported to be filed for the purpose of seeking a declaratory judgment to determine the effective date of Chapter 136, Public Acts of 1955, the General Education Bill, and second, whether it is mandatory as of the date of the filing of the bill, that the Board of Education elect as county-wide employees, including supervisors, only those who have been recommended by the county superintendent of education. It was alleged in the original bill that the defendants were guilty of certain acts of misconduct and that their failure as members of the board of education to elect only such county-wide employees as have been recommended by the county superintendent of education would have the ultimate effect of causing Carter County to be deprived of its share of the money coming from the State Education fund.
It is our opinion that there is no basis on which any counsel fees should have been allowed or could be allowed out of the school funds. If the suit be regarded as one for the protection of the school funds or the prevention of the loss of same, or the misappropriation, etc., the members of the Board of School Commissioners could not maintain a suit of this kind because the statute, Code § 2314, subsection 16, devolves the duty upon the State Commissioner of Education by and with the consent of the Governor to take all necessary steps to protect the school funds of the State, or any part thereof, and there is no showing of any circumstances indicating that the said State Commissioner of Education was in any way remiss in his duty in this regard. Garner v. Scales, 183 Tenn. 577, 585, 194 S.W.2d 452.
If on the other hand  it be regarded as a suit for a declaratory judgment simply, as it purported to be, there could still be no allowance for counsel fees out of said educational funds. In either aspect the following language from Southern v. Beeler, 183 Tenn. 272, 301, 195 S.W.2d 857, 870, is applicable:
"Now in the instant case the suit results in preventing the waste of public funds. The well nigh universal rule is that where counsel fees are awarded by the court the fee allowed must be paid out of a specific fund recovered, or out of specific property protected against threatened loss, or it must rest in contract, either express or implied. The principle underlying the declaration of lien for counsel fees is that there has been a recovery of money or property in behalf of a plaintiff litigant. Grant v. Lookout Mountain Co., supra [93 Tenn. 691, 28 S.W. 90, 27 L.R.A. 98]; Blackburn v. Clarke, 85 Tenn. 506, 3 S.W. 505."
The motion of counsel for appellants and appellees, respectively, is therefore disallowed.
Attention is called to the fact that there was no question raised on appeal with reference to the allowance of the $350 fee by the Chancellor for services rendered by counsel for the defendants in that Court. Therefore, the original opinion does not deal with that question at all, otherwise than we affirm the Chancellor's decree except for his failure to make a declaration on the second question involved in the appeal. Be that as it may  the allowance of this fee in the Court below is erroneous and the State Commissioner of Education will probably take proper steps to protect the educational fund as the statute above mentioned requires.